# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD DOUGLAS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:14CV1821 RLW |
| ST. FRANCOIS COUNTY JAIL, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no.139740), an inmate at St. Francis County Jail, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $3.27. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $16.33, and an average monthly balance of $1.50. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $3.27.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51.

This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**The Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are: St. Francois County Jail; Dan Bullock (Sheriff, St. Francis County); Dennis Smith (Jail Administrator); Hardy White (Corporal, Asst. Jail Administrator); Matthew Richard Ecke (Correctional Officer); Steve Robinson; Bethany Zarcoon; Gary Branham; Frank Vogenpole; Zerrick Hahn; Scott Halleck; Tammy Romine; and Lynn Gershenslager.

Plaintiff complains about the conditions of confinement at the St. Francis County Jail, asserting that there is overcrowding in the cells, black mold on the walls and ceilings of the cells and that the inmates are served unsanitary food. Plaintiff also alleges that inmates are given a small clothing allowance due to the overstrength population at the Jail, and that he has not been provided with the correct law books to assist him in his criminal action. Plaintiff states that due to the overcrowding, inmates have inadequate outside recreation.

Plaintiff complains in a conclusory manner that the food portions are "under 2000 calories per day. Plaintiff also asserts in a conclusory manner that he has generalized anxiety and does not have his "mental health medications." However, plaintiff has not stated whether he

has asked for mental health treatment and if such treatment was denied. Additionally, plaintiff has failed to identify any particular defendant related to his mental health "needs."

Plaintiff states that on two separate days during his incarceration at the Jail he has been told that he is only allowed to correspond with his attorney, "the court house" or with the child support authorities. Plaintiff does not state whether he was allowed on the other days to send postcards or other correspondence to family members, or if all mail to outsiders has been curtailed.

Plaintiff complains that he has been told by other inmates that he will eventually be charged by the County for "room and board"; however, plaintiff fails to allege how such a practice would violate his constitutional rights. Plaintiff also complains that the canteen goods cost more than food outside the prison, and he asserts that inmates must buy "hygiene" kits from the canteen, or ask for an indigent kit. Plaintiff complains that inmates are only allowed a "hygiene" kit once every 60 days. Plaintiff additionally claims that phone calls to outside parties require excess funds.

Last, plaintiff makes various claims relative to the alleged treatment by defendants of other inmates at the Jail.

In his request for relief, plaintiff seeks damages and injunctive relief.

**Discussion**

To the extent that plaintiff is attempting to assert claims against the St. Francois County Jail, his claims are legally frivolous because the Jail is not a suable entity. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such.").

Furthermore, plaintiff's claims against the individual defendants fail to state a claim upon which relief may be granted. The complaint is silent as to whether defendants are being sued in

their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of a government entity was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.

Even if plaintiff had made claims against defendants in their individual capacities, his assertions would still fail to state a claim for relief. Plaintiff's complaint is largely devoid of specific factual allegations against specific defendants. Instead, he has made generalized claims against correctional officers and supervisors, believing that these conclusory allegations should be enough to hold each and every one of those defendants responsible for every one of the alleged injustices he has taken the time to spell out for this Court. Unfortunately, plaintiff's complaint does not suffice to properly allege that the actions were known to the particular supervisory officials named as defendants, *see Wilson v. City of N. Little Rock*, 801 F.2d 316, 323 (8th Cir. 1986), and it assuredly does not plead adequately that the supervisors acted with the impermissible purpose as required by *Iqbal*. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts, except for conclusory assertions only, indicating that any of the individually named defendants were directly involved in or personally responsible for the alleged violations **of plaintiff's** constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.

Additionally, even if plaintiff had made individualized allegations against defendants, his conclusory and generalized allegations regarding what he believes to be unlawful conditions of confinement are subject to dismissal for failure to state a claim upon which relief may be granted.

In order to establish an unlawful conditions of confinement claim in violation of the 8th Amendment, a plaintiff must allege that he has been subjected to "extreme" deprivations and been denied "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 112 S.Ct. 995, 999-1000 (1992); *Howard v. Adkinson*, 887 F.2d 134, 137 (8th Cir. 1989); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The focus in a "conditions of confinement" case often falls on the length of exposure to the purported unsanitary conditions and the level of alleged filthiness the inmate was supposedly exposed to. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases).

Plaintiff's allegations that he doesn't believe the inmates receive enough changes in clothing, that the cells are often "overcrowded," that the diet provided to the inmates is lacking, that the cells lack proper ventilation, and that the walls and floors are unsanitary, are not connected to any unlawful actions allegedly taken by one particular defendant against plaintiff. Simply put, plaintiff's nonspecific claims lack any detailed accompanying information, other than his bald legal conclusions that such conditions are unlawful. Just like the allegations in *Ashcroft v. Iqbal*, plaintiff's assertions are nothing more than a "[t]hreadbare recital[] of a cause of action's elements" and are not entitled to an assumption of truth. 129 S. Ct. 1937, 1949 (2009).

Additionally, plaintiff's assertions that inmates are overcharged for their hygiene items and other canteen items fails to state a claim for relief. Plaintiff states that each inmate is given a "hygiene bag" when they enter the Jail, but after they use the shampoo, soap, toothbrush and toothpaste in the hygiene bag, they are required to buy their hygiene items from the commissary. He acknowledges that an inmate who does not have sufficient funds to pay for a hygiene bag is still entitled to order one every sixty days from the commissary, but he complains that the inmate will be charged a "debt balance." This practice is not unconstitutional.

It is true that the Eighth Amendment's requirement that "humane conditions of confinement" be provided by prison officials, see *Farmer v. Brennan,* 511 U.S. 825, 832 (1994), "include[s] provision for basic hygiene." *Whittington v. Ortiz,* 307 Fed. Appx. 179, 186 (10th Cir. Jan. 13, 2009) (unpublished op.) (citing *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996)). And "a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996). Moreover, policies forcing prisoners to choose between pursuing their legal rights and having

hygienic products violate the Eighth Amendment. *See Whittington,* 307 Fed. Appx. at 189; *Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir.1996).

However, plaintiff cannot state a claim for relief for "having to pay for hygiene items" because he has not asserted that he cannot pay for his own hygiene items. Plaintiff has not even alleged that by using his account funds to pay for hygiene items, his access to courts or some other constitutional requirements have been interfered with.[1] In light of the aforementioned, the claims for unlawful conditions of confinement will be dismissed at this time.

Plaintiff's generalized assertions regarding his access to personal mail on two days of his confinement fails to state a constitutional violation, as written. The Supreme Court has recognized that "[i]nmates clearly retain protections afforded by the First Amendment." *O'Lane v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). The addressee as well as the sender of direct personal correspondence is protected by the First Amendment against unjustified governmental interference with communication. *Procunier v. Martinez,* 416 U.S. 396, 408-09 (1974) (citing *Lamont v. Postmaster General,* 381 U.S. 301 (1965)). The Court determines the constitutionality of prison staff's scrutiny of incoming and outgoing non-legal mail[2] by evaluating whether "the regulation [is] reasonably related to a legitimate penological interest." *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir.1994).

---

[1] Although plaintiff asserts in a conclusory manner that he has not been provided with the right kind of lawbooks to help him with his case, this claim does not allege a First Amendment violation. "To state a claim [for denial of meaningful access to the courts], inmates must assert that they suffered an actual injury to pending or contemplated legal claims." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). Plaintiff has failed to allege an injury to his ongoing legal claims. As such, he has not stated a claim for relief.

[2] The First Amendment affords greater protection to an inmate's confidential communications between himself and his counsel of record. *See Foster v. Helling,* 210 F.3d 378 (8th Cir.2000) ("Prisoners retain their First Amendment rights of sending and receiving mail, and prison officials may not read inmates' legal mail." (citing *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir.1994)).

Plaintiff has not provided the Court with information as to what the policy or practice is with regard to the sending/receiving of personal mail at the Jail. Rather, plaintiff has merely complained that on two occasions he was told he could only send correspondence to his attorney, the court or to child support officials. Simply put, plaintiff has failed to allege that defendants' actions in failing to allow him to send personal mail on two separate days during his incarceration in some way interfered with his receipt of his mail or his ability to communicate with outside parties during his incarceration at the Jail. Similarly, plaintiff has not alleged that his free speech rights have been impeded by defendants' acts. Thus, the Court finds that plaintiff has not properly alleged a violation of his constitutional rights with respect to this claim.

Last, the Court will remind plaintiff that he cannot attempt to bring the claims of other inmates before this Court. Plaintiff is not an attorney and is simply not authorized to assert constitutional claims on behalf of the inmates who reside at the Correctional Center with him. *See* 28 U.S.C. § 1654. Therefore, the Court declines to address his arguments on behalf of other inmates currently incarcerated at the Jail.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #5] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $3.27 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 10th day of December, 2014.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE